UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Danielle Welch

        Movant,

    v.

United States of America; Attorney
General Pamela Bondi, *in her official
capacity*; and Department of Homeland
Security Secretary Kristi Noem, *in her
official capacity*,

        Respondents.

Case No. _____

**RULE 41(g) MOTION FOR
RETURN OF PROPERTY**

---

## INTRODUCTION

On February 6, 2026, ICE agents arrested Movant Danielle Welch in violation of the Fourth Amendment after she safely and lawfully followed ICE agents in her car. ICE agents also seized Ms. Welch's phone, digital camera and SD card (used for storing images taken using the camera). The agents told Ms. Welch that they could "hack" into her devices to get information and that they would probably get a warrant to search the devices. Ms. Welch brings this motion for the return of her devices, unsealing of any warrant affidavit related to the devices, and expungement of any information seized during a search of her devices.

Fed. R. Crim. P. 41(g) requires an evidentiary hearing to resolve any fact issues relevant to this Motion. To the extent that the Respondents dispute the unconstitutionality

of the seizure at issue here, or any other relevant facts, Ms. Welch requests that the Court set an evidentiary hearing to receive evidence related to those fact disputes.

## BACKGROUND

On February 6, 2026, Ms. Welch was following ICE agents in her vehicle and observing their activities in Minneapolis. Declaration of Danielle Welch ("Welch Dec."), ¶ 1. Around 1:45 p.m., after Ms. Welch had begun to follow an ICE vehicle in South Minneapolis, the ICE agents drove for fifteen minutes to Ms. Welch's home address in Robbinsdale in an apparent attempt to intimidate her. Ms. Welch followed from a safe distance. Over the course of the drive, three additional ICE vehicles began driving behind her. *Id.*, ¶ 2.

All four vehicles stopped in front of Ms. Welch's house. Agents got out and surrounded Ms. Welch's vehicle. They told Ms. Welch that they knew where she lived and that she would be arrested if she continued following them (notwithstanding that she had followed them back to her own home). *Id.*, ¶ 3. Agents then got back in their vehicles and drove off. *Id.*, ¶ 4. Ms. Welch continued to follow them, as did another car driven by an observer. *Id.*, ¶ 5.

Around 2:00 p.m. in North Minneapolis, Ms. Welch watched as masked ICE agents stopped, detained and violently arrested the other observer. They bundled this observer into a Black SUV and drove off. *Id.*, ¶ 6. Concerned for this observer's safety, Ms. Welch followed the Black SUV in her car. *Id.*, ¶ 7. While Ms. Welch followed the Black SUV, she observed traffic laws and followed the SUV at a safe distance. *Id.*, ¶ 8.

2

The Black SUV initially got onto the freeway as if it were headed to the Whipple Building from North Minneapolis. It exited at or around 46th Street, however, ultimately driving to the intersection of 44th Street and Stevens Avenue. *Id.*, ¶ 9. The Black SUV drove down 44th Street and then pulled over shortly before reaching the Stevens Avenue intersection. Ms. Welch drove past the Black SUV, and then a Minneapolis Fire Department Ford Explorer pulled up behind her. Ms. Welch pulled over to the side of 44th Street to allow it to pass, which it did. *Id.*, ¶ 10.

Almost instantly after the MFD vehicle passed, and while she was still pulled over and parked on the side of the street, four ICE vehicles boxed in Ms. Welch's car. Masked, armed agents swarmed Ms. Welch's car with their firearms drawn. One agent pointed his gun at Ms. Welch's head through the windshield of her stationary car. Ms. Welch was terrified. *Id.*, ¶ 11.

An agent opened Ms. Welch's car door, violently dragged her out of her car, and slammed her up against the side of the Black SUV. Agents handcuffed Ms. Welch behind her back and put her in the back of an ICE vehicle. The handcuffs were extremely tight and left bruises and red marks on Ms. Welch's wrists that did not clear up for days. *Id.*, ¶ 12.

The agents drove Ms. Welch to the Whipple Building. She was taken to a large garage-type room where she was photographed repeatedly by numerous agents, and agents took her phone (an Android Galaxy A13) and GoPro dashcam. The dashcam had an SD card in it, which was also confiscated. *Id.*, ¶ 13.

The agents who took Ms. Welch's phone and dashcam told her that they could "hack" her devices. *Id.*, ¶ 14. One agent told Ms. Welch that they would probably get a warrant and search her devices. *Id.*, ¶ 15. The agents asked Ms. Welch for her social security number and pulled records of her international travel, querying her about her recent trip to Dublin. *Id.*, ¶ 16.

Ms. Welch spent around 6-7 hours in a cell at the Whipple Building before agents finally released her around 10:00 p.m. Her phone, camera, and SD card were not returned and remain in ICE custody. *Id.*, ¶ 17. The SD card has footage of ICE agents driving to Ms. Welch's home address and later violently and unconstitutionally arresting her. Given ICE's pattern and practice of concocting falsehoods about people to excuse their own misconduct, including calling Renee Good a "domestic terrorist" and falsely claiming that Alex Pretti brandished a weapon before agents murdered him, Ms. Welch is concerned that ICE will delete the footage from this SD card to cover up their bad acts. *Id.*, ¶ 18.

After Ms. Welch got home from the Whipple Building, she logged into her Google Account and saw that there had been activity on her phone while she was sitting in a cell and the agents were in possession of her phone. *See id.*, Ex. A. Given this activity, as well as the agent's comments about "hacking" her phone and dashcam, Ms. Welch is concerned that ICE is illegally accessing information on her devices. *Id.*, ¶ 19.[1]

---

[1] ICE agents have informed other arrestees that their phones would be searched or cloned. *See, e.g.,* Riach Dec., Ex A, Declaration of Grace Steinmetz; Riach Dec., Ex. B,

Ms. Welch did not commit any crimes by following ICE on February 6 (or at any other time). Ms. Welch did not impede any ICE activities or operations; nor did she interfere with agents. Ms. Welch did not violate any traffic laws. *Id.*, ¶ 8. ICE had no reason to arrest her, let alone seize her phone, camera, and SD card and hold them for weeks. *Id.*, ¶ 21.

ICE and DHS agents have "repeatedly suggested that the Department of Homeland Security is building a 'domestic terrorists' database comprising information on U.S. citizens protesting ICE actions in recent weeks." *See* Declaration of Kevin C. Riach ("Riach Dec."), Exhibit D. For example, "an internal ICE memo circulated to ICE personnel temporarily deployed to Minneapolis instructed agents to 'capture all images, license plates, identification, and general information on hotels, agitators, protesters, etc., so we can capture it all in one consolidated form.' " *Id.* Further, ICE has recently procured software that "provides government agents the ability to extract information from phones even if they are password protected."[2] These circumstances raise further concerns that ICE is illegally accessing and obtaining information from Ms. Welch's electronic devices.

Finally, ICE's comments to Ms. Welch that agents intended to obtain a warrant and search her phone are highly troubling given ICE's well-established track record of making false statements to enable, justify, and cover up its misconduct. For example, Judge Sara

---

Declaration of Steven Paul Saari II; *see also* Riach Dec., Ex. C, Declaration of Mark Butcher (describing agent deleting videos from Butcher's phone).

[2] https://fedscoop.com/immigration-and-customs-enforcement-continues-its-work-with-cellebrite/

Ellis, who heard testimony and received evidence related to ICE's First Amendment violations in Chicago, determined that ICE agents and officials made false statements and lacked credibility. *See, e.g., Chicago Headline Club, et al. v. Noem, et al.*, No. 25 cv 12173, 2025 WL 3240782, at *9-13 (N.D. Ill. Nov. 20, 2025) (documenting numerous false statements under oath by ICE agents and officials).[3] Similarly, ICE agents have made false statements to federal investigators in the District of Minnesota, resulting in the procurement of arrest warrants and filing of criminal charges based on these false statements.[4] Given that no probable cause existed to seize Ms. Welch in the first place, let alone retain and search her

---

[3] *See also* Jon Seidel, *Tracking every known federal prosecution in Chicago tied to Trump's immigration blitz*, Chicago Sun-Times, February 18, 2026, (available at https:*//chicago.suntimes.com/2026/tracker-federal-prosecutions-chicago-status-trumps-immigration-blitz-ice*) (recording that of thirty-two federal cases brought in Chicago alleging assault on a federal officer, three had been rejected by the grand jury, one had resulted in acquittal, and fourteen others had been voluntarily dismissed by the government, and no defendants had been convicted).

[4] *See, e.g.,* Government's Motion to Dismiss Complaint with Prejudice, *United States v. Aljorna*, Case No. 26-mj-23, ECF No. 48 (D. Minn., filed Feb. 12, 2026) ("Newly discovered evidence in this matter is materially inconsistent with the allegations in the Complaint Affidavit, filed on January 16, 2026, as ECF 1-1, as well as the preliminary-hearing testimony (ECF 18, 19) that was based on information presented to the Affiant [by ICE agents]."); Government's Motion to Dismiss, *United States v. Youssouf*, Case No. 26-mj-85, ECF No. 23 (D. Minn., filed Feb. 18, 2026) (voluntarily dismissing case where affidavit supporting complaint stated agents told investigator that defendant had violently assaulted them, including kicking and punching them); Government's Motion to Dismiss, *United States v. Collyard*, Case No. 25-mj-854, ECF No. 20 (D. Minn., filed Jan. 20, 2026) (voluntarily dismissing case where agents told investigator defendant had threatened to kill officers and tackled officer, leading Judge Frank to observe, "[t]here is a substantial question of whether the alleged assault even occurred"); Minute Entry, *United States v. Espinoza-Espinoza*, Case No. 26-mj-30, ECF No. 10 (D. Minn., dated January 26, 2026) (recording government motion to dismiss complaint where affidavit supporting complaint stated that agents told investigator the defendant rammed agents with his car, injured agents, and resisted arrest).

phone, digital camera, and SD card, Ms. Welch is concerned that ICE agents made false or misleading statements to obtain a warrant to search and obtain information from her devices.

## ARGUMENT

### I. RESPONDENTS MUST RETURN MS. WELCH'S PHONE, CAMERA, AND SD CARD, AND EXPUNGE ANY SEIZED INFORMATION.

"A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."  Fed. R. Crim. P. 41(g). "Property" includes documents, books, papers, any other tangible objects, and information. Fed. R. Crim. P. 41(a)(2)(A).  "If a movant establishes lawful entitlement to the property, 'the government must then establish a legitimate reason to retain the property, which may be satisfied by showing a cognizable claim of ownership or right to possession adverse to the movant's.'"  *United States v. Hunt*, No. CR143144RHKJSM, 2016 WL 8970339, at *2 (D. Minn. Dec. 16, 2016) (quoting *Jackson v. United States*, 526 F.3d 394, 397 (8th Cir. 2008)).

Rule 41(g) "is the typical instrument to seek the return of seized property after an indictment has been issued. However, a [Rule 41(g)] motion prior to the filing of criminal charges is more properly considered a suit in equity rather than one under the Rules of Criminal Procedure."  *Black Hills Inst. of Geological Rsch. v. U.S. Dep't of Just.*, 967 F.2d 1237, 1239 (8th Cir. 1992).  Nonetheless, "[f]ederal courts have recognized an independent cause of action for return of property based on the general equitable jurisdiction of the federal courts."  *Id.*

7

"Among the factors courts consider in granting this 'anomalous jurisdiction' is whether the action involved a callous disregard for constitutional rights." *Id.* Here, Defendants have demonstrated a "callous disregard" for Ms. Welch's rights. She was detained, arrested and held in clear violation of the Fourth Amendment. The search and seizure of her property and information likewise violated the Fourth Amendment. Regardless of whether this Court construes this action as a Rule 41(g) Motion or a "suit in equity," the end result is clear: Ms. Welch's phone, camera, and SD card must be returned.

Respondents should further be required to expunge from any government computer or database any and all evidence seized pursuant to this unlawful search. Given that Rule 41(g) encompasses not just tangible property, but also "information," it is the proper vehicle to request the return and government destruction of any information seized through a cell phone search or search of Ms. Welch's digital camera SD card.

## II.    ANY RELATED WARRANTS AND SUPPORTING AFFIDAVITS SHOULD BE UNSEALED.

"[A] person whose property has been seized pursuant to a search warrant has a right under the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued." *In re Up North Plastics, Inc.*, 940 F. Supp. 229, 232 (D. Minn. 1996). Ms. Welch thus has a right to inspect any affidavit used to support a warrant application related to her electronic devices.

Moreover, a First Amendment right of public access extends to the documents filed in support of search warrant applications. *In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988). Thus, even if Ms. Welch had not

been the subject of an unlawful arrest and seizure, but rather was a journalist or just a concerned citizen, the law supports her access to the affidavit submitted in support of any warrant. As the Eighth Circuit has explained, public access to such documents "is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *Id.*

To be sure, access can be limited in the presence of an ongoing criminal investigation. To obtain such protection, however, the government must "make a specific factual showing of how its investigation will be compromised by the release of the affidavit to the person whose property was seized." *Matter of Up N. Plastics, Inc.,* 940 F. Supp. 229, 233 (D. Minn. 1996). The government cannot make that showing here, because Ms. Welch's conduct in following and observing ICE was lawful. The Court should unseal any warrant related to Ms. Welch's property and require Respondents to identify any information seized pursuant to any such warrant.

## III. THE COURT MUST SET AN EVIDENTIARY HEARING IF THE GOVERNMENT DISPUTES THE RELEVANT FACTS.

Finally, the court **must** receive evidence on any factual issue necessary to decide this Motion. Fed. R. Crim. P. 41(g) (emphasis added). To the extent Respondents dispute that they arrested Ms. Welch without probable cause, seized her phone, camera, and SD card without probable cause, illegally searched those items, and/or obtained a warrant based on false statements, the Court must set an evidentiary hearing at which evidence and testimony can be received regarding these factual issues.

## CONCLUSION

For the above-stated reasons, the Court should order Respondents to return Ms. Welch's phone, camera, and SD card, unseal any related warrant, require expungement of any information seized from Ms. Welch's electronic devices, and set an evidentiary hearing as appropriate.

Respectfully Submitted,


Dated:  February 25, 2026

s/ *Kevin C. Riach*
Kevin C. Riach
Attorney ID No. 389277
THE LAW OFFICE OF KEVIN C. RIACH
125 Main St. SE, Suite 339
Minneapolis, MN 55414
Phone:  612-203-8555
**ATTORNEY FOR MOVANT**

10